UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MARIA PUCCI,

    Plaintiff,

v.   Case No. 3:14-cv-1236-J-32MCR

BANK OF AMERICA, N.A.,
SPECIALIZED LOAN SERVICING,
LLC, NATIONSTAR MORTGAGE,
LLC, and WELLS FARGO BANK,
N.A., as Trustee for the Certificate
Holders of Banc of America Mortgage
Securities, Inc. Alternative Loan Trust
2007-2, Mortgage Pass-Through
Certificates, Series 2007-2,

    Defendants.

## O R D E R

Maria Pucci says that, even before her first payment on her loan was due, she started receiving erroneous dunning letters from her bank leading to negative consequences that have persisted. She sued the banks and servicers involved with her loan. This case is now before the Court on Defendant Specialized Loan Servicing, LLC's ("SLS") partial motion to dismiss the Amended Complaint (Doc. 25) and a motion to dismiss jointly filed by Defendants Nationstar Mortgage, LLC and Wells Fargo Bank, N.A. (Doc. 34).

**I.    ALLEGATIONS OF AMENDED COMPLAINT[1]**

On March 22, 2007, Pucci executed and delivered an interest only promissory note ("Note") in the amount of $1,260,000 to Bank of America which was secured by a mortgage. (Doc. 24 ¶¶ 11, 14.) The first installment payment under the note was due on May 1, 2007. (Doc. 24 ¶ 16.) However, in March 2007 Bank of America improperly assessed a late fee. (Doc. 24 ¶ 17.) Pucci issued a check on May 3, 2007 for the first installment payment, but Bank of America incorrectly applied the funds to the wrong loan number. (Doc. 24 ¶¶ 18, 19.)

One month after origination, Pucci began receiving foreclosure letters and learned that Bank of America was submitting negative reports to national credit reporting agencies ("NCRAs"). (Doc. 24 ¶ 20.) Pucci contacted Bank of America regarding the errors and was assured that the problem had been resolved and the funds were applied to the correct account. (Doc. 24 ¶ 21.) However, Bank of America continued to assess late fees and Pucci repeatedly contacted Bank of America to correct the errors, but to no avail. (Doc. 24 ¶¶ 23-26.) She eventually learned that the NCRAs listed her account as delinquent or associated with late payments. (Doc. 24 ¶ 27.) Bank of America's actions negatively impacted Pucci's credit rating such that she was unable to take advantage of refinancing options. (Doc. 24 ¶ 33.)

---

[1] The Court accepts as true the allegations in the Amended Complaint and views them in the light most favorable to Pucci when ruling on the motions to dismiss. Castro v. Sec'y of Homeland Sec., 472 F.3d 1334, 1336 (11th Cir. 2006); Michel v. NYP Holdings, Inc., No. 15-11453, --- F.3d ----, 2016 WL 860647, at *16 (11th Cir. Mar. 7, 2016).

Bank of America transferred the servicing rights to Pucci's loan to SLS on November 1, 2012. (Doc. 24 ¶ 36.) Upon transfer, Pucci notified SLS of the prior servicing errors and SLS assured her that they had been resolved; however, Pucci continued to receive delinquency and foreclosure notices. (Doc. 24 ¶¶ 38, 39, 43.) SLS continued to report the debt to the NCRAs as past due, delinquent, and late. (Doc. 24 ¶ 41.) Pucci received as many as 10 to 20 calls per day from SLS regarding her delinquent balance. (Doc. 24 ¶ 43.)

On August 29, 2013, while SLS remained the servicer of the obligation, ownership rights to Pucci's loan were transferred from Bank of America to Wells Fargo. (Doc. 24 ¶ 46.) Wells Fargo boarded the loan upon receipt but failed to correct the late fees and past due balance. (Doc. 24 ¶ 47.) Servicing rights were transferred from SLS to Nationstar on April 1, 2014. (Doc. 24 ¶ 48.) Pucci notified Nationstar of the errors and despite her making monthly payments and Nationstar assuring her that the errors had been resolved, Pucci continued to receive correspondence that her account was delinquent. (Doc. 24 ¶¶ 49, 50, 51.) Due to the actions of Defendants, Pucci was unable to refinance or restructure the Note. (Doc. 24 ¶ 54.)

## II. STANDARD OF REVIEW

When reviewing a motion to dismiss under Rule 12(b)(6), the Court must view the allegations in the light most favorable to the plaintiff and accept the allegations of the complaint as true. Speaker v. U.S. Dep't of Health & Human Servs., 623 F.3d 1371, 1379 (11th Cir. 2010). To avoid dismissal, a complaint must contain sufficient factual allegations to "state a claim to relief that is plausible on its face" and "raise a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555,

570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitle[ment] to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (alteration in original) (citations and quotation marks omitted).

### III.  SPECIALIZED LOAN SERVICING LLC'S PARTIAL MOTION TO DISMISS COUNTS II, V, VIII, AND XVI OF AMENDED COMPLAINT (DOC. 25)

#### A. Breach of Contract (Count II)

Under Florida law, to state a claim for breach of contract a plaintiff must allege the existence of a contract, a material breach, and resulting damages. Baron v. Osman, 39 So. 3d 449, 451 (Fla. Dist. Ct. App. 2010). SLS seeks dismissal of this claim because the Amended Complaint fails to allege the existence of a contract between Pucci and SLS. (Doc. 25 at 3.)

The Amended Complaint does allege that "[a] contract existed between [Pucci] and [SLS because], as the servicer of this particular debt obligation there is a contractual duty to competently service the loan and apply payments or assess late fees according to the terms of the Promissory Note and Mortgage." (Doc. 24 ¶ 78.) The Amended Complaint further alleges that SLS breached Paragraph 6(a) of the

4

Promissory Note[2] by charging improper late fees and failing to competently service the loan, and continued to breach the Note because it failed to correct the mistakes and was complicit in Bank of America's charging improper late fees, misapplication of payments, and demands for varying mortgage amounts. (Doc. 24 ¶¶ 83, 84.) However, SLS is not a party to either the Note or Mortgage, and the Amended Complaint alleges that Pucci entered into the contract with Bank of America, which ultimately transferred its ownership rights to Wells Fargo. (See Doc. 24 ¶¶ 11, 14, 46.) The Amended Complaint offers no evidence of a contract between Pucci and SLS, and fails to support its conclusory allegation with sufficient facts. The Amended Complaint therefore fails to state a claim for breach of contract against SLS.[3]

## B.   Breach of Covenant of Good Faith and Fair Dealing (Count VIII)

The Amended Complaint alleges that SLS breached the implied covenant of good faith and fair dealing, specifically acting in bad faith by being complicit in Bank

---

[2] Paragraph 6(a) states, "If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.0% of my overdue payment of interest and/or principal and interest. I will pay this late charge promptly but only once on each late payment." (Doc. 24 at 47.)

[3] In her response to SLS's motion to dismiss, Pucci for the first time asserts that a contract exists because SLS was entitled to collect payments and became the "Note Holder" and therefore a "successor in interest/ agent to the lender." (Doc. 35 ¶¶ 9-10.) Pucci's assertion that SLS was a Note Holder is inconsistent with allegations in the Amended Complaint that Pucci executed the Note and Mortgage and delivered them to Bank of America, and upon transfer to Wells Fargo, Wells Fargo became the "subsequent holder" of the obligation. (See Doc. 24 ¶¶ 92, 155.) Thus, the Amended Complaint alleges that only Bank of America and Wells Fargo were the "Note Holders."

5

of America's actions and failing to correct its mistakes despite Pucci informing SLS of the errors. (Doc. 24 ¶ 143.)

The covenant of good faith and fair dealing "ensures that neither party will do anything that will injure the right of the other party to receive the benefits of the contract." Martorella v. Deutsche Bank Nat. Trust Co., 931 F. Supp. 2d 1218, 1225 (S.D. Fla. 2013) (citing Burger King Corp. v. Weaver, 169 F.3d 1310, 1315 (11th Cir. 1999)). Florida law recognizes this implied covenant in every contract, but the covenant must actually relate to the performance of a contract; a breach of the covenant standing alone is insufficient. Id.; see also Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012) (applying Florida law); Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005) (applying Florida law); Shibata v. Lim, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000) (citing Burger King, 169 F.3d at 1315, 1318). As set forth in section III.A., supra, the Amended Complaint does not sufficiently allege the existence of a contract between Pucci and SLS, and without a contract there can be no implied covenant. The Amended Complaint therefore fails to state a claim against SLS for breach of the covenant.

### IV. DEFENDANTS NATIONSTAR MORTGAGE LLC'S AND WELLS FARGO BANK, N.A.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT (DOC. 34)

#### A. Breach of Contract against Nationstar (Count IV)

The Amended Complaint alleges that a contract exists between Pucci and Nationstar because "as the servicer of this particular debt obligation there is a contractual duty to competently service the loan and apply payments or assess late fees according to the terms of the Promissory Note and Mortgage." (Doc. 24 ¶ 105.)

6

The Amended Complaint further alleges that Nationstar breached the contract by "failing to competently correct the invalid delinquency" on Pucci's loan, and by failing to correct mistakes and being complicit in Bank of America's and SLS's "improper late fees, invalid delinquency and demands for varying mortgage payment amounts." (Doc. 24 ¶¶ 108, 109.)

The analysis regarding the breach of contract claim asserted against SLS applies to the breach of contract claim asserted against Nationstar. For the same reasons that the Amended Complaint fails to state a breach of contract claim against SLS, it also fails to state a breach of contract claim against Nationstar. See section III.A.

**B.     Breach of Covenant of Good Faith and Fair Dealing against Nationstar (Count X)**

The Amended Complaint fails to state a claim for breach of contract against Nationstar. Accordingly, for the reasons set forth in section III.B., supra, the Amended Complaint also fails to state a corresponding claim for breach of the implied covenant of good faith and fair dealing.

**V.    MOTIONS TO DISMISS OTHER COUNTS**

The Court has considered and will deny SLS's motion to dismiss the FDCPA and libel counts (Counts V and XVI). The Court has also considered and will deny Nationstar and Wells Fargo's motion to dismiss the remaining counts of the Amended Complaint.

Accordingly, it is hereby

**ORDERED:**

1. Specialized Loan Servicing LLC's Partial Motion to Dismiss Counts II, V, VIII, and XVI of Amended Complaint (Doc. 25) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that Counts II and VIII are dismissed. The motion is otherwise denied.

2. Defendants Nationstar Mortgage LLC's and Wells Fargo Bank, N.A.'s Motion to Dismiss Plaintiff's Amended Complaint (Doc. 34) is **GRANTED IN PART and DENIED IN PART**. The motion is granted to the extent that Counts IV and X are dismissed. The motion is otherwise denied.

3. At the upcoming telephone status conference, the Court will address whether the breach of contract and covenant claims should be dismissed with or without prejudice.

4. No later than **April 6, 2016**, Defendants SLS, Nationstar, and Wells Fargo shall file answers to the remaining counts of the Amended Complaint.

5. This case is set for a telephone status conference on **April 8, 2016 at 10:00 a.m.** The parties are directed to contact CourtCall at (866) 582-6878 no later than **April 4, 2016** to make the telephone conference call arrangements.[4]

---

[4] CourtCall will provide counsel with a number to call a CourtCall operator ten minutes before the hearing who will then connect the parties with the courtroom's audioconference system. There is a fee for using this service ($30 per caller for the first 45 minutes, $7 per 15 minute increment thereafter). The parties may not use cell phones or speaker phones during the call.

8

**DONE AND ORDERED** in Jacksonville, Florida the 23rd day of March, 2016.

_____
TIMOTHY J. CORRIGAN
United States District Judge

ab
Copies:

Counsel of record